**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEROY J. ROBBINS,
   *Plaintiff-Appellant,*

v.

SOCIAL SECURITY ADMINISTRATION,
   *Defendant-Appellee.*

No. 04-35890

D.C. No.
CV-03-00615-ALH

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Submitted December 9, 2005*
Portland, Oregon

Filed October 27, 2006

Before: James R. Browning, Dorothy W. Nelson, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Browning;
Dissent by Judge O'Scannlain

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

17963

## COUNSEL

David B. Lowry, Portland, Oregon, for the appellant.

David M. Blume, Assistant Regional Counsel, Seattle, Washington, for the appellee.

## OPINION

BROWNING, Circuit Judge:

Leroy J. Robbins appeals an affirmance of the Commissioner of Social Security's partial denial of benefits. We have jurisdiction to review under 28 U.S.C. § 1291. We reverse and remand because the Commissioner's decision is not supported by substantial evidence.

## I. Background

In October 1996, Robbins filed applications for supplemental security income and disability insurance benefits. He alleged he has been disabled since August 1993 by depression and severe impairments to his neck, left shoulder, back and knees. After his applications were denied initially and upon reconsideration, Robbins requested and was granted a hearing in March 1999 before Administrative Law Judge ("ALJ") Eileen Burlison during which the August 1998 testimony of Robbins and his son Rodney were accepted into the record. Judge Burlison denied Robbins's claims and, in August, 2000, the Social Security Appeals Council denied his request for review. Robbins then filed a complaint for review with the district court.

In August 2001, based on a stipulation by the parties, the district court reversed Judge Burlison's determination. The district court ordered the ALJ on remand to: order and evaluate a consultative exam as to Robbins's mental impairment claim; hold a new hearing; reevaluate the credibility of Robbins and of other lay testimony; and reevaluate Robbins's residual functional capacity ("RFC") and ability to perform past relevant or other work. In February 2003, a second hearing was conducted by Administrative Law Judge Riley Atkins, who found Robbins disabled as of September 7, 1998, but not before. Because Robbins did not file a written challenge to this decision, Judge Atkins's determination became the Commissioner's final decision.

In March 2003, Robbins filed a complaint for review with the district court challenging this partial denial of benefits. In September 2004, the district court affirmed the Commissioner's decision. Robbins timely appeals that judgment, challenging the ALJ's determinations at steps four and five of the Commissioner's five-step sequential evaluation process for determining if a claimant is disabled.[1]

## II.   Analysis

### A.   Standard of Review

We review *de novo* the findings of the district court. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). We may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error. *Id.* "Substantial evidence" means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). If the evidence can support either affirming or

---

[1]The five-step sequential evaluation is detailed at 20 C.F.R. §§ 404.1520; 416.920.

reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ. *Flaten*, 44 F.3d at 1457. However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

## B.    RFC Determination

As part of his step four determination, the ALJ determined Robbins's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545; Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p"), 1996 WL 374184. The ALJ found Robbins was capable of: (1) " 'less than a wide or full range of Medium' exertion with Postural and Manipulative non-exertional limitations" from his alleged August 1993 onset date through September 6, 1998; and (2) from September 7, 1998 on, " 'less than a wide or full range of Light' exertion, requiring a 'sit-stand-walk option' " in addition to the same, additional non-exertional limitations.

At step five, the ALJ found that, for the period between August 1993 and September 6, 1998, Robbins was not disabled. This conclusion relied on testimony of a vocational expert at the February 2003 hearing that because, based on his determined "medium" RFC, Robbins had been capable of working as a "general clerk" or "security or gate guard," positions that had existed in significant numbers in the national economy during that time. Based on similar testimony and the determined "light" RFC, the ALJ found Robbins was disabled as of September 7, 1998.

### 1.    *Adverse Credibility Finding*

[1] In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically

determinable impairment." *See* SSR 96-8p, 1996 WL 374184, at *5; *accord* 20 C.F.R. §§ 404.1545 (a)(3), 416.945(a)(3). Moreover, SSR 96-8p directs that "[c]areful consideration" be given to any evidence about symptoms "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone." *See* SSR 96-8p, 1996 WL 374184, at *5. When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. *See* Soc. Sec. Ruling 96-7p (July 2, 1996) ("SSR 96-7p"), 1996 WL 374186, at *1; 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence. *See* SSR 96-7p, 1996 WL 374186, at *1; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Moreover, unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. *See Smolen*, 80 F.3d at 1283-84 ("Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.").

**[2]** In this case, there is no dispute that the record establishes the existence of impairments to Robbins's shoulder, back and knees as of August 1993, which could have given rise to the severe pain and functional limitations between that date and September 1998, to which Robbins testified in his record affidavit. As a result, the ALJ was required to make a credibility finding as to Robbins's own testimony. Because

the ALJ made no finding that Robbins was malingering, he was required to give clear and convincing reasons in support of his adverse credibility finding. *Id.*

The record shows that the ALJ found Robbins's testimony to be "not entirely credible." Reading the ALJ's fleeting credibility finding in the best light, he offers the following as justification: First, Robbins's testimony was "not consistent with or supported by the overall medical evidence of record"; second, "his testimony regarding his alcohol dependence and abuse problem remains equivocal, based on his conflicting testimony and reports to doctors of maintaining sobriety, versus continuing to drink in lesser amounts."

**[3]** Taking the latter first, we do not consider a cursory finding that a single line of testimony is "equivocal" sufficient to constitute substantial evidence. While conflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding, *see, e.g.*, *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (finding applicant's testimony not credible where there was evidence of malingering and where the testimony and "various statements regarding his drinking were not consistent"), in this case it cannot justify such a finding alone and without further corroboration or explanation.[2]

---

[2]Indeed, with no reference to the record in this part of the decision, we are left to guess what testimony the ALJ was considering and why he thought it undermined Robbins's credibility. Our thorough review of the record shows one potential conflict in Robbins's self-reporting of his alcohol use. On November 12, 1996, an examiner noted that Robbins "occasionally drinks now, but stated that he did have a problem with alcohol." Four days later, another examiner recorded "The claimant has been drinking up to a case a day. This drinking escalated beginning in 1988." However, it is not immediately clear whether the "case a day" reference concerns contemporary consumption or the earlier period of heavier drinking Robbins was describing. Regardless, taken as a whole, the record suggests that Robbins had a history of excessive alcohol use, punctuated by periods of sobriety followed by relapse, and generally had "poor insight into his alcoholic problems."

**[4]** As for the former justification, it is exactly the type we have previously recognized the regulations prohibit. *See* SSR 96-7p, 1996 WL 374186, at *1; *Light*, 119 F.3d at 792 ("In this case, the ALJ disbelieved Light because no objective medical evidence supported Light's testimony regarding the severity of subjective symptoms from which he suffers, particularly pain. An ALJ may not discredit a claimant's subjective testimony on that basis. To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony.").

**[5]** In addition, we note that the ALJ did not provide a "narrative discussion" that "contain[s] specific reasons for the finding . . . , supported by the evidence in the case record"; nor was his brief notation "sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight," as he is required to do. *See* SSR 96-7p, 1996 WL 374186, *2; SSR 96-8p, 1996 WL 374184, at *7. So, even if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy. While an ALJ may certainly find testimony not credible and disregard it as an "unsupported, self-serving statement," we cannot affirm

---

Our review of the record on this issue, however, is beside the point. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the "fundamental rule of administrative law" that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency"); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). The ALJ's assessment of this or any other testimony about alcohol use is missing from the record, and no effort appears to have been made to investigate the possible disparity during the hearing.

such a determination unless it is supported by specific findings and reasoning. *See Flaten*, 44 F.3d at 1464.

### 2. *Lay Witness Testimony*

It is uncontested that the ALJ erred by failing to account for the August 1998 testimony of Robbins's son Rodney, in which Rodney offered eyewitness evidence supporting his father's claims as to functional limitations and severity of pain. As the Commissioner concedes, the ALJ is required to account for all lay witness testimony in the discussion of his or her findings. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

**[6]** We disagree with the Commissioner's suggestion that this error was harmless. While there may be cases in which the failure to consider lay witness testimony can be harmless, this is not one of them. We recently clarified the proper application of the harmless error standard in Social Security cases. *See Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). After reviewing our relevant prior decisions, we explained that we have only found harmless error when it was clear from the record that an ALJ's error was "inconsequential to the ultimate nondisability determination," noting that we had never found harmless an "ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work." *Id.* Accordingly, we held in *Stout* that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

**[7]** Besides Robbins's own testimony, the ALJ had only that of his wife, daughter and son to consider. Given that the

unaccounted-for testimony of Robbins's son directly supports his claim of disability since August 1993, the fact that the ALJ considered the similar testimony of Robbins's daughter cannot alone support a finding of harmlessness. Indeed, if credited, the testimony of Robbins's son adds substantial weight not only to Robbins's claim, but also to the testimony of Robbins's wife and daughter, which support Robbins's claim. Because the ALJ did not make a legally sufficient adverse credibility finding with regard to Robbins's own testimony, we cannot say with respect to Rodney's testimony that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*

[8] By failing to properly account for the testimony of Robbins and his son, the ALJ erred in assessing the record testimony offered in support of Robbins's disability claim. While the ALJ's RFC determination appears proper as to the limitations he considered, his failure to explain his dismissal of other claimed limitations results in our finding that substantial evidence does not support the ALJ's pre-September 1998 RFC determination.

## C. Vocational Expert Hypothetical

Robbins also challenges the ALJ's step five determination of his ability before September 8, 1998 to perform other work available in the national economy. He argues that the hypothetical posed to the vocational expert was inadequate because it excluded some of his functional limitations. This challenge engages the errors discussed above.[3]

[9] As the Commissioner correctly recognizes, in hypothet-

---

[3]As it was not raised and preserved for appeal at the hearing, we do not address Robbins's argument that the ALJ erred in relying on the vocational expert's testimony as to the number of jobs available without establishing a foundation for that testimony. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

icals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Conversely, an ALJ is not free to disregard properly supported limitations. The ALJ's failure to account for the testimony of Robbins and his son calls into question the validity of his determination of Robbins's limitations and RFC before September 1998. Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate. *Id.* Such a failure cannot be deemed harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ. Accordingly, the ALJ's step five determination is unsupported by substantial evidence. *See id.* at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").

REVERSED and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting:

I respectfully dissent from the court's holding that reversal and remand are required in this case. The administrative law judge's ("ALJ") analysis is thorough and cogent, and it should be affirmed.

I

First, the majority overturns the ALJ's adverse credibility determination. Maj. Op. at 17969-73. I disagree with its analysis, and I would instead hold that the ALJ satisfied the requirement of providing "clear and convincing" reasons for its finding, which is supported by substantial evidence in the record as a whole. *See Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

A

As the majority suggests, we have held previously that "[t]he claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). In other words, an ALJ "may not discredit the claimant's allegations of the severity of pain solely on the ground that the allegations are *unsupported* by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc) (emphasis added); *accord* 20 C.F.R. § 416.929(c)(2). That point of law is well-established.

The applicable regulations, however, make clear to claimants that in "[e]valuating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work," the agency will "consider *all of the available evidence*, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you." 20 C.F.R. § 416.929(c)(1). They specifically state that the agency will "also consider the medical opinions of your treating source and other medical opinions." *Id.* The regulations continue:

> *Objective medical evidence* of this type is a useful indicator to assist us in making reasonable conclusions *about the intensity and persistence of your symptoms and the effect those symptoms*, such as pain, may have on your ability to work . . . .
>
>     . . . .
>
>     . . . . We will consider your statements about the intensity, persistence, and limiting effects of your

symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and *the extent to which there are any conflicts between your statements and the rest of the evidence*, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.

*Id.* § 416.929(c)(2), (4) (emphases added); *accord id.* § 404.1529(c). We have also recognized that an ALJ may consider, as a factor in discrediting a claimant's subjective complaints, " 'testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.' " *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (quoting *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *accord Smolen*, 80 F.3d at 1284 & n.8 (stating that the ALJ shall consider the "observations of treating and examining physicians" regarding, *inter alia*, any "functional restrictions caused by the symptoms"). The applicable Social Security Ruling states likewise. It instructs that the adjudicator's credibility finding must be based on the available "medical signs and laboratory findings," as well as on "any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual." *See* SSR 96-7p, 1996 WL 374186, at *2.

In short, while the claimant is not required to provide objective medical evidence *affirmatively proving* the severity of his pain, *Bunnell*, 947 F.2d at 343, the foregoing authority makes clear that an ALJ may reject a claimant's statements about the severity of his symptoms and how they affect him if those statements are *inconsistent with or contradicted by* the objective medical evidence. *See, e.g.*, *Johnson*, 60 F.3d at 1434 (noting that "[t]he ALJ also identified several contradic-

tions between claimant's testimony and the relevant medical evidence"). The majority's confusion on this fundamental issue is patent.

The ALJ's assessment of Appellant Leroy Robbins's testimony, which I would hold entirely proper, began with the following correct statement of law:

> In establishing the residual functional capacity, I must determine whether claimant's complaints of symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929 and Social Security Ruling 96-7. I must also consider any medical opinions from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations on claimant's residual functional capacity.

(Citations omitted.) The ALJ then noted Robbins's testimony regarding his past work, which was that he was no longer able to even carry a can of paint upstairs. Robbins had further testified "that his typical day consist[ed] of sitting and watching television, because of his pain."

The ALJ found these allegations regarding Robbins's functional limitations "not entirely credible," noting that they were not "consistent with or supported by the overall medical evidence of record which reflects no serious physical or mental functional limitations." In making that finding, the ALJ permissibly relied on the opinion of Dr. Victoria Carvalho, which was that Robbins was "consistently assessed as capable of 'Medium' exertion, with the accommodation [due to Robbins's 'perceived pain'] of being able to 'change position every 2 hours, for 10-to-15 minutes.' " Aside from a "slight deviation in the claimant's knees, ankles and toes," Dr. Carvalho had assessed Robbins as having "no functional impair-

ment in the upper or lower extremities; good strength and no difficulties ambulating."[1] It was also proper for the ALJ to rely on the opinion of the impartial medical examiner, Dr. Orin H. Bruton, who agreed that Robbins could perform duties involving "Medium" exertion. Further, Dr. Julie Isaacson opined that Robbins's knee pain had improved following knee-replacement surgery and that he should "get back in the work force." As for Robbins's psychological state, Dr. Paul Stoltzfus's view, even as late as 2002, was that he had only " 'slight'-or-'mild' socialization limitations in a work environment and 'no' cognitive functional limitations." *See* SSR 96-7p, at *5 (stating that the ALJ's credibility determination should take into account any "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources").

These medical opinions simply were not consistent with Robbins's claim that his pain resigned him to a sedentary life of watching television. Thus, the ALJ did not, as the majority erroneously holds, disregard Robbins's testimony solely because he did not *prove* the severity of his pain by objective medical evidence. Rather, in the phrasing of the Social Security Administration, the ALJ properly found that Robbins's "alleged functional limitations and restrictions due to symptoms [could not] reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." SSR 96-7p, at *2.

The majority's approach is one I hope we will not repeat. Its conflating of the two relevant categories—a lack of affirmative support versus the presence of contradictory medical evidence—would absolutely bar adjudicators from making adverse credibility determinations so long as the claimants are able to keep their stories straight. The applicable regulations,

---

[1]As the relevant Social Security Ruling notes, the "effects [of symptoms such as pain] can often be clinically observed." SSR 96-7p, at *6.

agency ruling, and case law all counsel strongly against such an approach.

## B

Additionally, a claimant's inconsistent statements about the use of alcohol can contribute to a determination regarding that claimant's credibility. *See Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ made such a finding in this case, stating that Robbins presented "conflicting testimony and reports to doctors of maintaining sobriety, versus continuing to drink in lesser amounts." The ALJ noted that "[d]uring his initial screening on April 4, 1989, [Robbins] specifically denied having a problem with alcohol." Yet during that same period, Dr. Charles Reagan observed, "The claimant has been drinking up to a case a day. This drinking escalated beginning in 1988." Then on November 12, 1996, as the ALJ further noted, Robbins reported to Dr. Carvalho "that he continues to 'occasionally drink' but admitted 'he did have a problem with alcohol.' "[2]

## C

The majority's fallback argument is that the ALJ's decision is characterized by a "complete lack of meaningful explanation [which] gives this court nothing with which to assess its legitimacy." Maj. Op. at 17972. It asserts that the same error infects the ALJ's finding regarding Robbins's conflicting testimony as to his alcohol abuse. *See* Maj. Op. at 17971-72 n.2.

---

[2]That the ALJ uttered the word "equivocal" is of no importance. *See* Maj. Op. at 17971-72. The opinion states that Robbins's "testimony regarding his alcohol dependence and abuse problem remains equivocal" *because* of "his conflicting testimony." Robbins's testimony was clearly "conflicting"; it was the relevance of such testimony that the ALJ considered to be equivocal. This view is perfectly consistent with the finding that Robbins was "not entirely credible."

It is unclear to me why the majority chooses simply to disregard the many pages preceding (as well as the few pages following) the paragraph in which the ALJ made the credibility determination explicit. As the Commissioner suggests, after discussing in great detail the reasons supporting its ultimate findings, the ALJ was not required explicitly to link his determination to those reasons. *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("In all, the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons.").

Indeed, all of the reasons discussed above constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The majority is utterly wrong to suggest otherwise.

### D

In sum, the ALJ properly supported and adequately explained his adverse credibility determination. The finding is supported by specific, clear, and convincing reasons, and it should be affirmed.

### II

I also disagree with the majority's view that a remand is required because the ALJ failed explicitly to comment on the lay opinion testimony of Rodney Robbins, the claimant's son. *See* Maj. Op. at 17973-74.

### A

The application of harmless error doctrine in our review of the denial of Social Security disability benefits is well-established. *See, e.g.*, *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1983). In *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004), for example, we simply asked whether there remained "substantial evidence supporting the ALJ's decision," or whether the error in any way "negate[d] the validity of the ALJ's ultimate conclusion." *Id.* at 1197. A similar analysis would have been proper in this case.

But, as the majority says, "[w]e recently clarified the proper application of the harmless error standard in Social Security cases." Maj. Op. at 17973. I did not agree with this same majority's formulation in *Stout v. Commissioner*, 454 F.3d 1050 (9th Cir. 2006), and I do not endorse it here. *Stout*'s "no reasonable ALJ" standard unduly curtails the latitude we have always accorded to the administrative bodies we review.

### B

Regardless, I would hold that the ALJ's error in this case was harmless—even under *Stout*'s exacting test. In *Stout*, as in each of the cases upon which the majority there relied, the ALJ failed to consider *all* available lay witness testimony. *See* 454 F.3d at 1056 (citing various in- and out-of-circuit cases). This case is quite different. Although the ALJ failed to comment on the testimony of the claimant's son, he considered at length the strikingly similar testimony of the claimant's wife and daughter. Given that aspect of the case, as well as the nature of the ALJ's ultimate determination, we "can confidently conclude that no reasonable ALJ, [even] fully crediting the [omitted] testimony, could have reached a different disability determination." *Id.*

### 1

As noted, the majority reverses because the ALJ erred in failing to mention the substance of roughly four pages of Rodney Robbins's unsworn testimony, dated August 28, 1998. Rodney testified that in August 1993 his father had trouble walking, i.e., a "slight limp that become more pronounced . . .

on some days than others." He explained that given his father's high level of pain tolerance, his verbalizing his pain was "noteworthy." Rodney recalled his father having "some difficulty" using his arms and hands. He further testified that his father was in pain on approximately half of the occasions on which Rodney saw him, and that his father would become "worn out" easily. Rodney also noticed "marked depression" and some irritability. According to Rodney's testimony, his father's condition had only worsened since August 1993.

Though the ALJ did not mention this testimony in his decision, he did explicitly consider the testimony of Rhonda Heaps, Robbins's daughter. Heaps testified that she had seen her father two to three times per week since August 1993. She testified that he had difficulty walking because of swollen knees, a condition she noticed perhaps once every month. Heaps also discussed her father's pain, explaining that he engaged in uncharacteristic behaviors such as "sitting in [a] chair with his leg up." She testified that her father was depressed and irritable, and that his condition made it difficult to engage in physical tasks associated with managing apartments. The ALJ found her testimony "generally credible, at least to the extent of her reported first-hand observations of her father."

The ALJ also discussed the testimony of Gloria Jean Robbins, the appellant's wife. Ms. Robbins similarly testified to the difficulty Robbins experienced with the physical duties—such as painting, cleaning, and moving heavy items—of his past work as an apartment manager. Even paperwork became a problem, according to Ms. Robbins, because of lapses in memory and an inability to concentrate.

The lay witness testimony from the foregoing individuals stood in the record alongside various items of medical evidence and the expert opinions of multiple medical professionals. The ALJ agreed with Robbins's claim that his impairments were "severe," within the meaning of the regula-

tions. The judge found that Robbins suffered from "severe impairments of left rotator cuff tendinitis; pseudo-gout of the knees, bilaterally; degenerative disc disease of the lumbar spine and history of alcoholism, in partial remission."

In assessing the impact of these impairments, the ALJ considered the opinion of Dr. Richard Guidry, who examined Robbins in May and June of 1995. Dr. Guidry noted that Robbins exhibited "no discomfort" during range-of-motion testing and that Robbins gave "poor effort" during portions of the test. The ALJ also assessed x-ray and MRI findings from May 1995, which showed "moderately severe degenerative changes" in Robbins's spine, but no "signs of disc herniation." Dr. Guidry placed Robbins on "light" duty status.

The ALJ next considered a November 1996 consultative orthopedic evaluation by Dr. Carvalho, which revealed "a slightly decreased radial deviation (i.e., movement through normal range incurring slight pain or numbness), bilaterally in the ankles, with vibratory sensation absent in the knees, ankles and toes, bilaterally." The ALJ noted that Dr. Carvalho otherwise "found no functional impairment in the upper or lower extremities; good strength and no difficulties ambulating." Dr. Carvalho's assessment of Robbins's residual functional capacity ("RFC") was that he could perform "medium" exertion, and was able to carry up to 25 pounds "frequently" and up to 50 pounds "occasionally." The doctor noted that because of his "perceived pain," Robbins should be permitted to "change position every two hours for 10 to 15 minutes."

From February through November of 1997, Dr. Sean Stadtlander treated Robbins for pain in his back, left shoulder, right knee, right wrist and elbow, and neck. Spinal x-rays revealed "moderate" or "mild" degenerative disc disease, but "no evidence of acute bony trauma." The doctor prescribed pain medication. With respect to Robbins's knees, x-rays showed "prominent cartilage calcification" of the left knee and softening of the cartilage in the right knee. Robbins was referred to

Dr. Julie Isaacson, an orthopedic surgeon, who aspirated Robbins's right knee and thereafter noted "significant improvement."

In June 1998, upon finding evidence of a meniscal tear and complaints of pain, swelling, and tenderness, Dr. Isaacson performed a total right knee replacement surgery. Thereafter Robbins underwent a course of physical therapy and received pain medication. The ALJ noted that by August 11, 1998, Robbins reported no longer using the pain medication. The ALJ further noted Dr. Isaacson's opinion "that she would like to see [Robbins] in the work force."

Turning to Robbins's RFC, the ALJ considered Robbins's past work experience; the impact of alcoholism, which the ALJ found minimal; Robbins's own testimony of pain and anxiety, which the ALJ found "not entirely credible"; and the testimony of Robbins's wife and daughter, which primarily concerned Robbins's inability to perform work as an apartment manager. The ALJ reviewed the RFC assessment made by "the State agency non-examining medical consultants," which stated that Robbins was capable of "medium" exertion but should be allowed to "change position every 2-hours, for 10-to-15 minutes." Dr. Bruton, as the "impartial medical expert," reviewed all of the medical evidence and testified that he concurred with the opinion of the State agency consultants. Ultimately, then, the ALJ concluded that Robbins's pre-1998 RFC was "at the level of 'less than a wide or full range of Medium' exertion with Postural and Manipulative non-exertional limitations."[3]

---

[3]Specifically, the ALJ found that Robbins could lift and carry up to 50 pounds "occasionally" and up to 25 pounds "frequently"; could stand and walk up to six hours in an eight-hour work day with normal breaks; could sit about two hours in an eight-hour work day with normal breaks; and had "push/pull abilities" limited to the amount of weight he could lift and carry. The ALJ also agreed that Robbins had "postural and manipulative non-exertional limitations;" he was "precluded from any kneeling, squatting, crawling or crouching, because of his bilateral knee condition." Robbins was also limited to "only 'occasional' overhead reaching with his non-dominant left arm and shoulder."

Next, the ALJ agreed with Robbins's claim (which was supported by the testimony of an impartial vocational expert) that he could no longer perform any of his past work, including the management of apartment buildings. However, the ALJ then held that the Social Security Administration had met its burden of showing other jobs, "existing in significant numbers in the regional or national economy," that Robbins could have performed from 1993 to 1998. Although Robbins was without transferable skills, the vocational expert testified that he could perform other jobs which required "less than a wide or full range of Medium" exertion. Namely, Robbins could have worked as a "general clerk" or a "security or gate guard." Those jobs required only "Light exertion, at a semi-skilled level," and would be available even with Robbins's limitations. The ALJ concurred, and he thus found Robbins "not disabled" from August 20, 1993, though September 7, 1998.

2

I think it clear that the ALJ made a careful assessment of the available medical evidence and found that notwithstanding various postural and manipulative limitations, Robbins could perform work involving something less than a medium range of exertion. The ALJ's reasoned conclusion, in other words, was that the "overall medical evidence of record [ ] reflect[ed] no serious physical or mental functional limitations."

Taking Rodney Robbins's testimony into account, the record hardly looks different. Rodney's testimony covered no ground not also covered by the appellant's daughter and wife. Rodney discussed the pain in his father's knees; testified to uncharacteristic behavior that indicated the extent of his father's pain; said that his father had difficulty using his arms; and noted depression and irritability. Rhonda Heaps also discussed each of these issues, in very similar terms, and the ALJ found her credible. It defies reason to conclude that the ALJ's

determination of Robbins's RFC may have been different had he only considered a second recitation of the very same observations.

I am also confident in the harmlessness of the error at issue because of the nature of the ALJ's decision. The ALJ did not doubt that Robbins experienced significant pain; he accepted Rhonda Heaps's testimony as credible, and thus accounted for every limitation to which Rodney Robbins testified. The ALJ further agreed that some impairments were "severe," and his findings accommodated Robbins's need to change positions regularly and take breaks. He also agreed that Robbins could no longer perform work as an apartment manager, which was the subject with which the lay opinion testimony was primarily concerned.

As such, and in light of the proper credibility determination as to Robbins, the ALJ could then reasonably rely on the medical evidence in determining the impact the perceived pain would have had on Robbins's ability to work in *other jobs*. That medical evidence showed, without equivocation, that prior to September 7, 1998, Robbins had no functional limitation that would have prevented his employment. As detailed above, he had little discomfort during range of motion testing in 1995; x-rays showed only "moderate" degeneration in his spine; he responded well to pain medication, even after the knee replacement; and he had "good strength and no difficulties ambulating." Every medical professional who offered an opinion on the subject—including Drs. Guidry, Carvalho, and Isaacson, as well as the State agency medical consultants and Dr. Bruton, the independent medical expert—suggested in clear terms that Robbins could re-enter the workforce. The ALJ determined that Robbins could do so in a capacity requiring "less than a wide or full range of Medium" exertion. The testimony of Rodney Robbins, which concerned the pain his father experienced while walking or working as an apartment manager, in no way could have undermined this determination so as to deprive it of support by substantial evidence.

## C

Because the lay witness testimony did not actually touch on Robbins's ability to perform work as a "general clerk" or "security or gate guard," the "weight" it may have added—while hardly "substantial"—is entirely beside the point. In determining whether the ALJ's failure to address Rodney Robbins's testimony was harmless error, after *Stout* we ask whether a reasonable ALJ could have arrived at a different conclusion. Rodney Robbins provided no information not already provided by Rhonda Heaps, and he spoke to no limitations not already accounted for by the ALJ. For those reasons, I think it utterly apparent that there is no such possibility here.[4]

## III

Because the majority's opinion suffers from fundamental errors and fails fairly to apply its own harmless-error standard, I respectfully dissent.

---

[4]Moreover, the ALJ's assessment of Robbins's RFC was complete, specific, and supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints."). As a result, the hypothetical posed to the vocational expert was without error. *Id.* at 1217-18 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." (citing *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989))).