**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GORDON STOUT,

*Plaintiff-Appellant,*

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

*Defendant-Appellee.*

No. 04-36006

D.C. No.
CV-03-06113-MFM

OPINION

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, District Judge, Presiding

Submitted December 9, 2005*
Portland, Oregon

Filed July 25, 2006

Before: James R. Browning, Dorothy W. Nelson, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Browning;
Dissent by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Alan S. Graf and Kimberly K. Tucker, Alan Stuart Graf, P.C., Portland, Oregon, for the appellant.

Robert D. McCallum, Jr., Assistant Attorney General, United States Department of Justice, Washington D.C.; Karin J. Immergut, United States Attorney, and Craig J. Casey, Assistant United States Attorney, United States Attorney's Office, Portland, Oregon; and Vikash Chhagan, Acting Regional Chief Counsel, Region X, and L. Jamala Edwards, Assistant Regional Counsel, Social Security Administration, Office of the General Counsel, Seattle, Washington, for the appellee.

## OPINION

BROWNING, Circuit Judge:

Gordon Stout appeals the district court's judgment affirming the Social Security Commissioner's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. Stout contends the Administrative Law Judge ("ALJ") improperly disregarded lay testimony regarding his inability to work.[1] We have jurisdiction under 28 U.S.C. § 1291. Because the ALJ failed to discuss competent lay witness testimony favorable to Stout, we reverse the district court's judgment and remand.

## I

Stout filed his current claims for DIB and SSI in February 2000, alleging disability primarily due to back and mental impairments with an onset date of April 18, 1997. The Social Security Administration denied these claims initially and upon reconsideration. Stout requested a hearing.

At his hearing in February 2002, Stout's sister, Udena Stout ("Udena"), testified that Stout's impairments negatively affect his ability to work. Additionally, the ALJ received into evidence a letter from Stout's brother-in-law, Jay Vasquez, with whom Stout worked for approximately fifteen years. Similar to Udena's testimony, Vasquez described Stout's inability to work without certain accommodations. During a supplemental hearing in March 2002, a vocational expert ("VE") testified. In response to the ALJ's hypothetical, the VE opined that Stout could perform one of his previous jobs and other jobs in the national economy.

---

[1]By memorandum disposition filed herewith, we affirm the district court's judgment as to all other issues Stout raises on appeal.

In his decision, the ALJ found Stout able to perform his past relevant work as a vine pruner and, therefore, not disabled within the meaning of the Social Security Act. The Appeals Council denied Stout's request for review, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Stout sought judicial review in the United States District Court for the District of Oregon, which affirmed the Commissioner's decision. Stout timely appeals.

## II

We review de novo the district court's affirmance of the Commissioner's final decision. *Webb v. Barnhart*, 433 F.3d 683, 685-86 (9th Cir. 2005). We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision. *Id.* at 686.

## III

### A

To medically qualify for benefits under the Social Security Act, a claimant must establish "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In assessing whether a claimant is disabled, the ALJ follows a five-step, sequential evaluation process:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If

so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520, 416.920.

## B

On appeal, Stout challenges the ALJ's findings at steps four and five.[2] At step four, the ALJ determined Stout's RFC—the most Stout could still do despite his limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. Finding that Stout had various physical restrictions and a limited capacity for teamwork and required non-complex, "two to three step tasks which are fairly repetitive," the ALJ concluded Stout could "perform a wide range of light unskilled work, and the inclusive sedentary level work." *See* 20 C.F.R. §§ 404.1567(a) & (b), 416.967(a) & (b).

---

[2]Though the ALJ made no specific finding regarding step five, his decision notes the VE's testimony about other work in the national economy that a person with Stout's RFC and vocational characteristics could perform.

Based upon Stout's RFC and the VE's testimony, the ALJ found Stout able to perform his past relevant work as a vine pruner. Consequently, the ALJ concluded Stout was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1560(b)(3) ("If we find that you have the [RFC] to do your past relevant work, we will determine that you can still do your past work and are not disabled."), 416.960(b)(3) (same).

Stout contends the ALJ erred in finding he could perform his past relevant work and other work in the national economy. Specifically, he argues the ALJ erred in rejecting without comment the lay witness testimony of his sister, Udena, and brother-in-law, Jay Vasquez. The Commissioner concedes error but argues it was harmless. We disagree.

## C

**[1]** In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and therefore *cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

**[2]** Here, the ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work. Both Udena

and Vasquez testified, consistent with medical evidence, about Stout's inability to deal with the demands of work. After explaining Stout has "problems" accomplishing even simple tasks, Vasquez, who worked with Stout for fifteen years as both his boss and co-worker, provided the following example: "I would have [Stout] clean out the tool trailer and ask him to label nails, nuts, bolts, and screws. Ten minutes later I would come back and he would be throwing things on the ground, becoming frustrated with the simplest of tasks." Similarly, Udena testified that simple, monotonous tasks "easily frustrate[ ]" Stout, so much so that, "when something doesn't go just right[,] . . . he goes into a rage, blindly throwing things and self-destruction [sic]."

**[3]** Moreover, both witnesses explained Stout's uncommon need for supervision to perform uncomplicated tasks. For instance, Udena testified that for Stout to "keep focused on the job at hand," someone must "watch over him." While she stated Stout "could handle" simple jobs, such as "pick[ing] up stuff in the yard," she further clarified why he needs supervision to accomplish such jobs: "Mentally he would tend to stray [from] what he's supposed to be doing, find interest in other things, wander off, and probably explore the area." Likewise, Vasquez stated that, for Stout to accomplish even "menial labor," he requires "constant supervision."

**[4]** Although the VE specifically testified that a need for literal, constant supervision would not be acceptable in competitive employment, save for one passing reference to Udena's testimony about Stout's general self-destructive behaviors, the ALJ's decision wholly fails to mention Udena's or Vasquez's testimony about how Stout's impairments affect his ability to work. Therefore, the ALJ erred. *See Nguyen*, 100 F.3d at 1467.

## D

Conceding the ALJ's silent disregard of the lay testimony contravenes our case law and the controlling regulations, the

Commissioner requests we disregard the error as harmless. The Commissioner's argument echoes, if not recites verbatim, the district court's harmless error analysis, which it began by reasoning that Udena's testimony "suggests [Stout] has always had intellectual deficits, depression, and episodes of self-destructive behavior. Yet, [Stout] has been able to engage in substantial work activity in the past." As to Vasquez's testimony, the court reasoned that he worked with Stout for fifteen years and, "[w]hile it took effort, [Stout] was able to engage in substantial gainful activity while suffering from his current impairments." Because the district court found "[t]he medical evidence establishes that nothing has changed," it concluded there was "no reason to overturn the ALJ's decision."

We note that two considerations caution, if not preclude, us from adopting these justifications for embracing harmless error here. First, the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony. *See Dodrill*, 12 F.3d at 919. Indeed, "we cannot rely on independent findings of the district court." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, "[w]e are constrained to review the reasons the ALJ asserts." *Id*. Second, "we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Consequently, if the Commissioner's request that we dismiss the ALJ's error as harmless "invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline." *Id*. at 847-48.

We recognize harmless error applies in the Social Security context. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless." (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991))). Fleshing out the standard's contours of application in this unique, nonadversarial area, however,

leads us to conclude we must decline the Commissioner's current invitation to employ it here.

We recently applied harmless error where, unlike here, the ALJ expressly discredited testimony but erred in doing so. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). In *Batson*, the ALJ found the claimant's pain testimony incredible based, in part, on the claimant's statement that he watched over six hours of television per day. *Id.* at 1196-97. The ALJ reasoned that the claimant's ability to sit for that amount of time while watching television indicated he could sit for at least six hours of an eight-hour workday. *Id.* at 1197. Although the record did not confirm the claimant always sat during his television viewing, we concluded that any error the ALJ committed in assuming he did was harmless. *Id.* We did so because the ALJ provided numerous other record-supported reasons for discrediting the claimant's testimony, which allowed our review to determine the ALJ's error did not materially impact his decision. *Id.*

We have also affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. For example, in *Curry*, we held harmless the ALJ's erroneous vocational findings that the claimant was fifty years of age and had a G.E.D. because the findings were inconsequential to the ALJ's determination that she could perform "light work." 925 F.2d at 1130-31. Whether she was fifty or, as she testified, fifty-three years old, the claimant fell within the "closely approaching advanced age" category. *Id.* at 1131; *see* 20 C.F.R. § 404.1563(d) (explaining that, in considering age as a vocational factor, claimants aged 50-54 are regarded as "closely approaching advanced age")). Likewise, the claimant's literacy and ability to communicate in English rendered the G.E.D. finding "immaterial" to the ALJ's nondisability determination. *Curry*, 925 F.2d at 1131. Similarly, in *Burch*, after "[a]ssuming without deciding" the ALJ erred in finding the claimant's obesity was not a "severe" impairment, we held

the assumptive error did not require reversal because the step was "resolved in [the claimant's] favor." 400 F.3d at 682.

We have additionally found harmless errors that occurred during a procedure or step the ALJ was not required to perform. *See, e.g.*, *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1379-80 (9th Cir. 1984). In *Booz*, we held any error the ALJ committed in applying the medical-vocational grids was harmless because the exercise was "unnecessary" in light of the claimant's failure to overcome the nondisability presumption arising from an earlier, unappealed decision. 734 F.2d at 1379-80. In *Matthews*, we similarly held harmless the ALJ's failure, "whether or not the ALJ erred," to include the claimant's "staying in one position" limitation in his hypothetical to the VE. 10 F.3d at 681. We did so after determining the VE's testimony was "not required" because the claimant had failed to show he could not return to his past employment, and, in any event, the claimant had already testified that his past work required a combination of sitting and standing, thus rendering the limitation "not relevant." *Id.*

**[5]** We discern two particulars from these cases. First, in each case, the ALJ's error, if any indeed existed, was inconsequential to the ultimate nondisability determination. *See Burch*, 400 F.3d at 682 (concluding any error was nonprejudicial); *Matthews*, 10 F.3d at 681 (concluding any error occurred during hypothetical ALJ was "not required" to ask); *Curry*, 925 F.2d at 1131 (concluding errors were "immaterial"); *Booz*, 734 F.2d at 1379-80 (concluding error occurred during "unnecessary" procedure); *see also Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 434 (9th Cir. 1988) (concluding any error ALJ committed in classifying claimant's past work as "light" was harmless where record supported ALJ's finding that claimant could perform other light work). Second, in not one of these cases did we conclude, as the Commissioner requests we do here, that an ALJ's silent disregard of lay testimony about how an impairment limits a

claimant's ability to work was harmless. *Cf. Batson*, 359 F.3d at 1197 (holding harmless ALJ's partial reliance on assumption record did not support where ALJ gave numerous other record-supported reasons for adverse credibility finding). Rather, we, along with our sister circuits, have consistently reversed the Commissioner's decisions for failure to comment on such competent testimony. *See, e.g.*, *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085-86 (9th Cir. 2000); *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000); *Nguyen*, 100 F.3d at 1467; *Dodrill*, 12 F.3d at 919; *see also, e.g.*, *Godbey v. Apfel*, 238 F.3d 803, 809-10 (7th Cir. 2000); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990); *Huston v. Bowen*, 838 F.2d 1125, 1131-33 (10th Cir. 1988); *Basinger v. Heckler*, 725 F.2d 1166, 1170 (8th Cir. 1984); *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3rd Cir. 1983).

**[6]** In light of these cases, we hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.

**[7]** In the present case, we cannot so conclude. If fully credited, the lay testimony supports a conclusion that Stout's mental impairments render him in need of a special working environment which, particularly when considering the VE's testimony, a reasonable ALJ could find precludes Stout from returning to gainful employment. Consequently, the ALJ's error in failing to provide reasons for rejecting it was not harmless.

**[8]** This conclusion is consistent with our prior harmless error cases in this area. Unlike in *Burch*, we cannot say the ALJ's error here was nonprejudicial to Stout. Based on his RFC determination and the VE's response to a hypothetical—which both failed to account for lay testimony about how

Stout's impairments negatively affect his ability to work—the ALJ found Stout could return to his previous work and was, therefore, not disabled. *Cf. Burch*, 400 F.3d at 682 (concluding any error ALJ committed at step two was harmless because the step was resolved in claimant's favor). Nor can we conclude, as we did in *Curry*, that the ALJ's error was irrelevant to his nondisability finding. *Cf.* 925 F.2d at 1131. The VE specifically opined that constant supervision is unacceptable in competitive employment; yet, the ALJ articulated no reasons for dismissing the uncontradicted lay testimony indicating Stout needed such supervision to perform even simple tasks. This silent disregard thus leaves us, unlike in *Batson*, with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision. *Cf.* 359 F.3d at 1190.

Moreover, the ALJ's error did not occur during an unnecessary exercise or procedure. *Cf. Matthews*, 10 F.3d at 681; *Booz*, 734 F.2d at 1379-80. Numerous regulations command the ALJ to consider, throughout the sequential process, lay testimony as to how claimants' impairments affect their ability to work. *See, e.g.*, 20 C.F.R. §§ 404.1513(d)(4) & (e), 404.1529(c), 404.1545, 416.913(d)(4) & (e), 416.929(c), 416.945. And, as we have held on many occasions, if the ALJ wishes to discount such testimony in accord with this obligation, "he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919; *Nguyen*, 100 F.3d at 1467.

## IV

**[9]** Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision that Stout can perform his previous work as a vine pruner. Consequently, we reverse the district court's judgment and remand with instructions to

remand to the Commissioner for further administrative proceedings consistent with this opinion.

**REVERSED and REMANDED**.

O'SCANNLAIN, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that the ALJ's failure to comment properly on the lay witness testimony of Stout's sister and brother-in-law was not harmless error. I am persuaded, as was the District Court, that even if the lay witness testimony is credited, all the evidence taken as a whole overwhelmingly supports denial of Stout's application for Disability Insurance Benefits and Supplemental Security Income.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, the lay testimony, when viewed in conjunction with the evidence the ALJ properly considered, does not undermine the ALJ's finding that Stout can engage in his prior work as a vine pruner.

The thrust of the lay testimony was that, in his past work as a roofer, Stout had difficulty working with other people without supervision. Although the letter from Stout's brother-in-law, Jay Vasquez, used the term "constant supervision" to describe the assistance Stout requires, the remainder of Vasquez's letter indicates that Vasquez did not provide Stout literal, constant supervision during the ten years Stout worked in his construction company. It also indicates that after Vasquez closed his construction company, Stout worked as a roofer for another company without supervision and support from a family member. Similarly, the testimony of Stout's sister, Udena Stout, does not stand for the proposition that Stout

requires constant supervision. In fact, Udena testified that Stout's need for supervision would vary in relationship to the complexity of the task. She indicated that Stout could handle simple tasks that require minimal interaction with others, although he would have a tendency to become bored or lose focus.

All the limitations reasonably supported by the lay testimony appeared in the ALJ's RFC finding. The ALJ noted that Stout has "mild to moderate" difficulties in social functioning and in concentration, persistence, or pace. This information appeared in the ALJ's RFC, which noted that Stout "has a limited capacity for teamwork and needs to minimize repetitive public contact . . . . has a limited capacity for multitasking with complex instructions . . . . [and] . . . "needs two to three step tasks which are fairly repetitive."

As the district court observed, Stout has engaged in substantial work activity in the past and there is no evidence, in the lay testimony or elsewhere, that his mental capabilities have changed. I accordingly agree with the district court's determination that the ALJ's failure to comment properly on the lay testimony is harmless error.