William LEWIS, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Defendant–Appellee.

No. 04–17414.

United States Court of Appeals, Ninth Circuit.

Submitted on briefs Nov. 17, 2006 *.

Filed Feb. 1, 2007.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Brewer & Mitchell, LLP, Sacramento, CA, for Plaintiff–Appellant.

Michael A. Cabotaje, Social Security Administration, San Francisco, CA, for Defendant–Appellee.

Before WALLACE and THOMAS, Circuit Judges, and EZRA **, District Judge.

### MEMORANDUM ***

Lewis argues that the administrative law judge [ALJ] "committed six principal errors in reaching her flawed determination" that Lewis was not disabled. We review de novo the district court's order upholding the Commissioner's final denial of benefits. *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir.1998). We affirm the district court if the Commissioner's decision was "supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997). "Substantial evidence is more than a scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala,* 50 F.3d 748, 749 (9th Cir.1995). "[I]f evidence is suscepti-

ble of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.*

▪ Lewis argues that the ALJ erred in failing to consider all of his impairments at Step 2 of her analysis. Since there is substantial evidence in the medical records that Lewis's "status post laminectomy" encompassed his weak ankle doriflexors, the ALJ's decision not to list it as a separate impairment is properly supported. Similarly, there is substantial evidence in the medical record reflecting that Lewis's gastroparesis was related to his diabetes. The discussion of "diabetes and abdominal pain" in the ALJ's decision also indicates that the ALJ understood the gastroparesis to be a part of Lewis's diabetes. Similarly, even assuming that Lewis's diabetic neuropathy had any effect on his ability to work, there is substantial evidence that this impairment was diabetes-related. Thus, the ALJ was not required to list the diabetic neuropathy in addition to diabetes mellitus. Finally, although the medical records confirm that Lewis had hypertension, Lewis has failed to allege what impact, if any, his high blood pressure had on his ability to work. In light of this, the ALJ was not required to consider separately the hypertension under Step 2.

▪ Lewis contends that the ALJ misunderstood the scope and impact of Lewis's diabetes. Lewis argues that his condition was more than "merely 'Diabetes Mellitus.'" However, there is no indication (and Lewis points us to no support in the record) that "diabetes mellitus" is less "pernicious and pervasive" than the type of diabetes that Lewis had.

** The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

■ Turning to Lewis's bursitis, the medical records reflect that Lewis underwent knee surgery in 1984 and suffered from "left-sided greater trochater bursitis" after the operation. Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, however, any error was harmless. *Cf. Stout v. Commissioner*, 454 F.3d 1050, 1054–55 (9th Cir.2006) (discussing harmless error analysis in the Social Security context). Although the ALJ did not discuss the bursitis at Step 2, she discussed it in Step 4 of the evaluation. Since "the ALJ's error, if any indeed existed, was inconsequential to the ultimate nondisability determination," *id.* at 1055, it was harmless.

Next, Lewis argues that the ALJ improperly failed to credit his statements regarding the extent and nature of his pain. We have stated, "If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that [he] experiences pain at a higher level ... the Secretary is free to decide to disbelieve that testimony, but must make specific findings justifying that decision." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986) (internal parenthetical and citations omitted).

■ In finding Lewis not credible, the ALJ cited the following: that Dr. Weinrab testified that Lewis had engaged "in drug-seeking behavior"; that his x-rays reflected "only minimal degenerative changes" in his knees; that Dr. Madireddi observed that Lewis had "normal motor strength"; and that this last observation was inconsistent with Lewis's statements that he spent most of his time lying down watching television. She also pointed out that Lewis "was observed to be laughing and talking while using the telephone" while requesting Demerol for pancreatic symptoms. The medical evaluations relied on by the ALJ and the evidence of drug-seeking behavior were sufficient evidence on which the ALJ could find that Lewis was not credible.

■ Lewis also contends that the ALJ improperly discredited the opinions of Dr. Ferrari and Dr. Rose. The ALJ decision cites specific and legitimate reasons for discounting each opinion: that Dr. Rose "rarely treated the claimant for musculoskeletal complaints," and that Dr. Ferrari "did not cite physical findings in support of the restrictions that he placed on [Lewis]." She also stated that Dr. Rose "had not treated the claimant since November 2000." Further, the ALJ's findings were supported by substantial evidence in the record, including Dr. Weinrab's testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001) (the contrary opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record").

■ Lewis next argues that the ALJ erred because her hypothetical question did not include all of his limitations. "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988) (emphasis omitted). "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations should be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." *Id.* at 423. As discussed above, the ALJ properly found that Lewis was not credible after stating specific and legitimate reasons for disbelieving him. There was also substantial evidence in the record supporting the ALJ's adverse credibility finding. Therefore, the ALJ did

not err in limiting the symptoms presented in her hypothetical.

■ Lewis also contends that because the ALJ improperly found his testimony not credible, "she also failed to correctly determine the work interruptions" flowing from these symptoms. As discussed above, the ALJ properly found that Lewis was not credible. In addition, the finding that Lewis could perform sedentary, unskilled, work was adequately supported by the vocational expert, who testified that a hypothetical person having Lewis's impairments could perform sedentary, unskilled work. Thus, there was no error here either.

■ Finally, Lewis argues that the ALJ failed to develop the record fully with respect to his psychiatric problems. This argument is waived, because Lewis failed to raise it before the district court.

AFFIRMED.