King K. GARDNER, Plaintiff–Appellant,

v.

Michael J. ASTRUE,* Commissioner Social Security Administration, Defendant–Appellee.

No. 06–35217.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 17, 2007.

Filed Nov. 13, 2007.

---

* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Amy M. Gilbrough, Esq., Elie Halpern & Associates, PS, Olympia, WA, for Plaintiff–Appellant.

Richard Rodriguez, Esq., SSA–Social Security Administration Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: REINHARDT and PAEZ, Circuit Judges, and STROM,[**] Senior District Judge.

## MEMORANDUM [***]

Appellant King Gardner sought judicial review of the Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. The district court affirmed the Commissioner's denial of benefits, and Gardner appeals.[1] Gardner claims that the Administrative Law Judge (ALJ) erred by (1) basing his step-two[2] determination on an erroneous reading of the medical evidence and (2) basing his step-five determination on flawed vocational expert testimony. We agree on both counts. We therefore vacate and remand for further proceedings.

First, Gardner argues that substantial evidence does not support the ALJ's finding, at step two of the sequential evaluation process, that Gardner's right ankle impairment was not severe. We agree. In concluding that the ankle impairment was non-severe, the ALJ referred to medical records showing that "flexion and extension x-rays ... revealed ... no instability" and that "[f]urther imaging was ... of no value, as there was no neurological deficit." A review of the records in question, however, leaves no doubt that the "flexion and extension x-rays" were x-rays of Gardner's *back*, not his lower extremity, and that the phrase "[f]urther imaging" also referred to further imaging of Gardner's back. Moreover, Gardner's doctors repeatedly noted that he reported pain in the ankle and walked with a limp, and x-rays of the ankle showed at least minor "arthritic changes." This evidence is enough to clear the low bar at step two. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). On remand, the ALJ should consider Gardner's right ankle impairment severe and incorporate any limitations due to this impairment in Gardner's RFC before conducting the step-five determination.

Next, we consider Gardner's challenge to the ALJ's step-five determination that he could perform the jobs of electron-

[**] The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

[***] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The district court had jurisdiction under 42 U.S.C. §§ 405(g); this court has jurisdiction under 28 U.S.C. § 1291. We review the district court's decision *de novo* and will affirm the Commissioner's decision if that decision is free of legal error and supported by substantial evidence. *Massachi v. Astrue,* 486 F.3d 1149, 1152 (9th Cir.2007).

2. *See generally Stout v. Comm'r,* 454 F.3d 1050, 1052 (9th Cir.2006) (describing Commissioner's five-step sequential evaluation process for determining disability) (citing 20 C.F.R. § 404.1520).

ics worker and marker. There is no dispute that, along with a severe back impairment, Gardner suffers from a severe impairment of his hands due to carpal tunnel syndrome. Taking these impairments into account at step four of the sequential evaluation process, the ALJ found that Gardner retained the residual functional capacity (RFC) to engage in light exertional work with limitations including that "[h]e ... should not use his hands repetitively for manipulation bilaterally." The ALJ found that this RFC precluded Gardner from returning to his previous work. However, at step five, the ALJ found that Gardner could perform "other work which exists in significant number in the national economy"—specifically, the jobs of "electronics worker (packaging)" and "marker."[3] Gardner argues that this finding is erroneous or not supported by substantial evidence.[4]

The ALJ's step-five finding was based on the testimony of a vocational expert (VE). A VE's testimony must be "in response to a hypothetical [question] that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995). The ALJ's RFC finding stated that Gardner "should not use his hands repetitively for manipulation bilaterally." However, the hypothetical question that the ALJ posed to the VE employed different terminology. The ALJ first referred to "constant, repetitive" ma-

nipulation and then referred to "frequent ... just not constant" manipulation. The VE testified that a person who could not perform "constant, repetitive manipulation" would be "preclude[d]" from all of the jobs in question, but that a person who could perform "frequent" manipulation could perform the jobs of electronics worker and marker. Inexplicably, the ALJ never asked a question that tracked the language used in the ALJ's RFC determination. Thus, it is unclear from the VE's testimony whether a person who "should not use his hands repetitively for manipulation bilaterally" could perform the jobs of electronics worker and marker.

The Commissioner argues that "any ... distinction" between the terms "frequently" and "repetitively" "is of no consequence." Even if we were to accept the Commissioner's argument that the VE testimony establishes that an "individual who was ... limited to frequent (or repetitive) use of his hands[ ] could perform the jobs" of electronics worker and marker, we still could not affirm the ALJ's decision. The ALJ did not find that Gardner was *limited to* repetitive use of his hands; he found that Gardner was *precluded* from repetitive use of his hands.[5]

In light of the significance of the VE's testimony, we conclude that the ALJ's incomplete and inaccurate hypothetical questions render the VE's testimony without

---

**3.** The ALJ also identified the job of "small products assembler," but the Commissioner concedes that this was error.

**4.** Contrary to the Commissioner's argument, this issue was raised in the district court and therefore is not waived.

**5.** Although we do not base our holding on this point, we note that "repetitively" in this context appears to refer to a *qualitative* characteristic—i.e., *how* one uses his hands, or *what type* of motion is required—whereas "constantly" and "frequently" seem to describe a

*quantitative* characteristic—i.e., *how often* one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner *frequently*, or it might require him to use his hands in a repetitive manner *constantly*. The VE's testimony suggests that someone who cannot not use his hands *constantly* in a repetitive manner, but can use his hands *frequently* in a repetitive manner, could perform the jobs of electronics worker and marker. The ALJ's RFC finding, however, suggested that Gardner should not use his hands in a repetitive manner *at all*, whether constantly

"evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan,* 924 F.2d 841, 850 (9th Cir.1991). We therefore remand for a new step-five determination. *See Massachi v. Astrue,* 486 F.3d 1149, 1153–54 & n. 20 (9th Cir.2007) (remanding where court could not "determine whether the ALJ properly relied on [a VE's] testimony").[6]

For the reasons stated, we vacate the district court's judgment and remand with instructions to remand this case to the Commissioner for further proceedings consistent with this disposition.

VACATED and REMANDED.

---

or frequently. Under this interpretation of the relevant terms, the ALJ's step-five finding that Gardner could perform the jobs of electronics worker and marker would be erroneous. The ALJ should clarify his use of these terms on remand.

6. On remand, the ALJ should also clarify the apparent contradiction between the ALJ's

finding that Gardner "requires the ability to sit and/or stand as necessary," and the VE testimony that the jobs of electronics worker and marker would not allow an "absolute ability to change positions at will."