**Brenda S. DOBSON, Plaintiff— Appellant,**

v.

**Michael J. ASTRUE,\* Commissioner of Social Security Administration, Defendant—Appellee.**

**No. 05–36212.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2008.

Filed Feb. 20, 2008.

---

\* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Max Rae, Salem, OR, for Plaintiff–Appellant.

Neil J. Evans, Esq., Office of the U.S. Attorney, Portland, OR, Lucille G. Meis, Esq., Franco Becia, Esq., Social Security Administration, Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: RYMER, T.G. NELSON, and PAEZ, Circuit Judges.

## MEMORANDUM **

Brenda S. Dobson appeals the district court's judgment affirming the Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33.[1] Dobson challenges the Administrative Law Judge's (ALJ) step-three determination [2] that her left knee impairment did not meet Listing 1.02A.[3] We agree with Dobson that the ALJ did not correctly apply the Listing's definition of "inability to ambulate effectively" and therefore his finding that Dobson did not meet Listing 1.02A was not supported by substantial evidence. We vacate and remand for further proceedings.

In discussing whether Dobson met Listing 1.02A, the ALJ focused exclusively on whether Dobson was required to use assistive devices to walk. He stated that "[t]here is no evidence that any treating or examining physician has reported that a cane is medically necessary" and that, "[i]n addition, while the claimant has at times used a cane as an assistive device for ambulation, its use did not limit the functioning of *both* upper extremities." In support of his ruling, the ALJ relied on Listing 1.00B2b, which states in part: "Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's decision *de novo. Massachi v. Astrue,* 486 F.3d 1149, 1152 (9th Cir.2007).

2. *See generally Stout v. Comm'r,* 454 F.3d 1050, 1052 (9th Cir.2006) (describing Com-

missioner's five-step sequential evaluation process for determining disability) (citing 20 C.F.R. § 404.1520).

3. *See* 20 C.F.R., Pt. 404, Subpart P, Appendix 1, § 1.02A (eff. Feb. 19, 2002) (major dysfunction of one major peripheral weight-bearing joint with "inability to ambulate effectively").

both upper extremities." 20 C.F.R., Pt. 404, Subpart P, Appendix 1, § 1.00B(2)(b)(1) (eff. Feb. 19, 2002).

The full definition of "inability to ambulate effectively" in Listing 1.00B2b and the Commissioner's commentary on effective ambulation in the Federal Register make clear, however, that the use of a two-handed assistive device is not necessary to establish ineffective ambulation under this Listing. As the Commissioner has explained, while the required use of a two-handed assistive device is *independently sufficient* to establish ineffective ambulation, ineffective ambulation may also be established if the claimant otherwise meets the definition and examples set forth in the Listing.[4] Listing 1.002B2b defines inability to ambulate effectively as an "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities," *id.*, and it illustrates this definition with examples. Those examples include not only "the inability to walk without the use of a walker, two crutches or two canes," but also "the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* § 1.00B(2)(b)(2). Generally, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.*

Here, the ALJ did not analyze whether Dobson could (with or without a cane) "ambulate effectively." He did not consider whether she could "sustain [ ] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Nor did the ALJ compare Dobson's functional ability to the examples provided in the Listing to determine if Dobson could (with or without a cane) "walk a block at a reasonable pace on rough or uneven surfaces . . . carry out routine ambulatory activities, such as shopping and banking . . . [or] climb a few steps at a reasonable pace with the use of a single hand rail." Rather, the ALJ erroneously treated as dispositive the fact that Dobson was not medically required to use an assistive device, and thus ended his step-three inquiry prematurely.

The ALJ's failure to apply the correct standard for inability to ambulate effectively was not harmless because evidence in the record could reasonably support a finding, under the correct standard as described above, that Dobson met Listing 1.02A. In a different section of his decision, the ALJ noted Dobson's testimony that, in late 1994, she needed "assistance with household chores or driving," had trouble "climbing stairs," and "could not walk on uneven surfaces even with a cane." Moreover, in discussing his step-four findings, the ALJ stated that he gave "signifi-

---

4. *Compare, e.g.,* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed.Reg. 58010, 58027 (Nov. 19, 2001) ("The explanation is intended to mean that individuals who can only walk with the aid of hand-held assistive devices requiring the use of both upper extremities would meet the definition of inability to ambulate effectively."), *with id.* at 58013 ("[I]f someone who uses one cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing."), *and id.* at 58026–27 ("The criteria do not require an individual to use an assistive device of any kind. . . . [The] explanation and examples should make it clear that this applies to anyone who cannot walk adequately."), *and id.* at 58027 ("[W]e recognize that individuals with extreme inability to ambulate do not necessarily use assistive devices. . . . Furthermore, we hope it is clear that the criteria are not intended to exclude all but those confined to wheelchairs.").

cant weight to the opinion of Dr. Segil that the claimant was limited to work which precludes ... walking on uneven ground" and that Dr. Segil's opinion "reasonably approximat[ed] [Dobson's] limitations as of December 1, 1994." This evidence was not addressed in the ALJ's step-three analysis.[5]

After determining that Dobson was not medically required to use an assistive device for walking, the ALJ failed to complete the step-three analysis by determining whether Dobson could *otherwise* ambulate effectively. We vacate the district court's judgment and remand with instructions to remand this case to the ALJ for a new step-three analysis and other proceedings consistent with this disposition.

VACATED and REMANDED.

---

5. Dobson urges us to treat the ALJ's step-four finding that she lacked the residual functional capacity to do work which "require[d] ambulation on uneven ground" as dispositive of the step-three inquiry and remand for an immediate calculation of benefits. However, because the step-three inquiry is distinct from the step-four inquiry, we decline to do so.