FILED

MAR 22 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BIRGIT Y. PUTZ, | No. 09-35329 |
| Plaintiff - Appellant, | D.C. No. 3:08-cv-05290-RBL |
| v. | |
| MICHAEL J. ASTRUE, | MEMORANDUM [*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted March 8, 2010
Seattle, Washington

Before: TASHIMA, FISHER and BERZON, Circuit Judges.

Birgit Y. Putz appeals from the district court's order affirming the

Commissioner's decision denying Social Security Disability Insurance benefits.

Because the Administrative Law Judge's (ALJ) determinations discrediting various

sources of evidence are not supported by substantial evidence, we reverse.

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

The ALJ offered six reasons for discrediting Putz's testimony regarding the severity of her symptoms: (1) Putz's statement to Dr. Gan that she had been feeling well until just a few weeks prior to an office visit on May 30, 2002; (2) "there is no objective medical evidence to support the severity of her symptoms"; (3) since December 2001, "the claimant has seen numerous physicians but none of them have given the claimant a firm diagnosis of chronic fatigue"; (4) Putz "is not taking any prescribed medication"; (5) Putz "is only receiving treatment from a naturopath"; and (6) "claimant did not receive any psychiatric treatment prior to her date last insured."

The ALJ's reasons for discrediting Putz's testimony are not "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). (1) Putz's statement to Dr. Gan that she had "felt well" prior to suffering heart palpitations and a rapid heart rate in May 2002 related to her heart problems rather than her chronic fatigue. (2) Putz need not present objective medical evidence to demonstrate the severity of her fatigue. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). (3) Two acceptable medical sources have diagnosed Putz with chronic fatigue syndrome; no physician has contradicted or questioned those diagnoses. (4) Putz "tried various anti-depressants and anti-anxiety medications off and on for a long time." (5) Putz received treatment from various medical doctors, including

2

a psychiatrist, an infectious disease specialist, a rheumatologist, two cardiologists and an endocrinologist. Putz's reliance on naturopathic care does not defeat her claim. *See* Social Security Ruling ("SSR") 99-2p. (6) Putz used antidepressant medications and saw a psychiatrist prior to December 2001.

The Commissioner argues that the adverse credibility determination nonetheless is supported by substantial evidence because in 1996 Putz declined Dr. Data's suggestion to visit a chronic fatigue clinic in Seattle. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ, however, never offered Putz an opportunity to explain her decision not to visit the Seattle clinic. The Commissioner also overlooks Dr. Data's assessment that Putz, as a general matter, "has been very compliant" in following treatment recommendations. Moreover, this factor was not relied upon by the ALJ and is therefore not a proper basis for upholding the Commissioner's adverse credibility determination. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The ALJ's disregard for statements of Dr. Data, Putz's treating medical source since 1994, also is not supported by substantial evidence. The ALJ gave

3

"no weight" to Dr. Data's residual functional capacity evaluation and "little weight" to her 2003 letter. According to Social Security Ruling 99-2p, the ALJ should "carefully consider" information provided by treating naturopaths. Statements by naturopaths "may be very useful in deciding the individual's credibility, . . . to assess an individual's ability to function on a day-to-day basis and to depict the individual's capacities over a period of time." SSR 99-2p. Dr. Data was Putz's primary care provider, observed Putz for more than a decade and witnessed the changes brought about by Putz's illness. She was therefore well positioned to offer useful information regarding the severity of Putz's fatigue, and the ALJ's reasons for discounting Dr. Data's statements are inadequate. Dr. Data's statements were consistent with her March 25, 2002 treatment notes. Although her February 16, 1999 treatment notes contain a single notation that is *potentially* inconsistent with her statements, the ALJ decision to credit this single notation was unreasonable in light of the evidence as a whole.

The ALJ's determination to give "little weight" to the testimony of two lay witnesses, Drena Putz and Louella Martin, also is not supported by substantial evidence. The ALJ discredited their testimony because it was (1) vague; (2) based on Putz's subjective assertions; (3) not supported by the record; and (4) not time specific. In fact, their testimony was specific and probative, based on personal

4

observations of Putz and consistent with the testimony and medical documentation in the record as a whole. The testimony was vague as to time, but not so vague as to negate its probative value, especially given that the ALJ made no effort to elicit more specific information from the witnesses. The witnesses' testimony was probative, not only to corroborate other evidence regarding Putz's present day limitations, but also to document the "substantial reduction in [Putz's] previous levels of occupational, educational, social, [and] personal activities." SSR 99-2p. The ALJ therefore should have given the testimony greater weight. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.").

We reverse and remand for a calculation of benefits. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

**REVERSED AND REMANDED.**

*Putz v. Astrue*, No. 09-35329

TASHIMA, Circuit Judge, dissenting:

This court may set aside a decision of the Commissioner of Social Security only if it is unsupported by substantial evidence or is based on legal error. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Because the ALJ provided clear and convincing reasons for his decision, supported by substantial evidence, I would affirm.

First, Putz stated to Dr. Gan that she had been feeling well until a few weeks prior to May 30, 2002. While this statement could be interpreted to refer to Putz's heart problems, as does the majority, that is not the only rational interpretation – the statement could just as well have referred to Putz's general health, including her fatigue. *See id.* Thus, this evidence supports the ALJ's finding that Putz was not disabled in December 2001.

Second, no objective medical evidence supported the claimed severity of Putz's symptoms. "Although lack of medical evidence cannot form the sole basis for discounting [a claimant's] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Third, Putz did not seek aggressive treatment consistent with the claimed severity of her symptoms. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony . . . ." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

2007).  The ALJ noted that Putz was not taking prescribed medication and was only receiving treatment from a naturopath.  Although Putz visited various doctors, the ALJ reasonably concluded that these doctors did not provide "treatment."  *See* 20 C.F.R. § 404.1502 (noting that treatment is marked by an ongoing relationship). At the hearing before the ALJ, Putz's own counsel asked her why she had not sought more treatment, and Putz responded only that her naturopath had nothing more to offer.  The ALJ, therefore, reasonably found that Putz did not adequately explain her failure to seek treatment and properly considered this as a factor.  *See* *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc).

Fourth, Putz's naturopath, Dr. Data, is not an "acceptable medical source", and her opinions are not entitled to controlling weight.  Soc. Sec. Rul. 06-03p.  The ALJ reasonably discounted her statements because they were based primarily on Putz's subjective complaints.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Dr. Data's letter supporting Putz's disability claim was written almost two years after the alleged disability, was conclusory, and admitted that Putz's physical examinations showed no abnormal findings.  Furthermore, on February 16, 1999, the visit prior to Putz's alleged disability onset date, Dr. Data wrote that Putz had good energy.

The majority states that "[t]wo acceptable medical sources have diagnosed

2

Putz with chronic fatigue syndrome; no physician has contradicted or questioned those diagnoses." But that statement only begs the question. No one questions that Putz has CFS; what is at issue is the *severity* of her CFS, and that is the nub of the case before us. Much of the evidence in this case is susceptible to differing interpretations and our role is not to second-guess the ALJ's rational interpretation of the evidence. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Even if this court discounts some of the ALJ's reasons for discrediting Putz's testimony, as does the majority, the remaining evidence is substantial and sufficiently supports the ALJ's decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

For these reasons, I would affirm the decision of the Commissioner and the district court and respectfully dissent.