**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOYCE ANN RYAN-WERRY, | No. 13-35753 |
| Plaintiff - Appellant, | D.C. No. 3:12 cv-05445 JLR |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Submitted June 2, 2015[**]
Seattle, Washington

Before: O'SCANNLAIN, TASHIMA, and McKEOWN, Circuit Judges.

Joyce Ryan-Werry ("Ryan-Werry") appeals from the district court's order

affirming the Administrative Law Judge's ("ALJ") denial of benefits. We have

jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

**1.** Ryan-Werry argues that the ALJ erred by according "little weight" to the opinions of three of her treating and examining physicians, Drs. John Daniel, Fletcher Taylor, and Loren McCollom, and by according "some weight" to another examining physician, Dr. Terilee Wingate. Where, as here, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citations, internal quotation marks, and alteration omitted).

**a.** The ALJ properly discredited Dr. Daniel's opinion because his conclusions were inconsistent with Ryan-Werry's own testimony. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999) (upholding an ALJ's rejection of a treating physician's opinion where the "ALJ cited to testimony from [the claimant] that conflicted with the" physician's testimony). For example, Dr. Daniel opined that Ryan-Werry would "not be able to perform" various functions with her hands, fingers, and arms "at all" – including "[f]ine[ly] [m]anipulat[ing]" her fingers, or grasping, turning, or twisting objects with her hands. This conclusion was contradicted by Ryan-Werry's own testimony that she could dust, fold laundry, play the piano, and use the computer. Similarly, Dr. Daniel opined that Ryan-Werry could "rarely" turn her head right or left, look up,

or hold her head in a static position. This conclusion was at odds with Ryan-Werry's testimony that she could drive a car.

In addition, the ALJ properly disregarded Dr. Daniel's opinion because it was inconsistent with the medical record as a whole. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between [a physician's assessment] and [a claimant's] medical records provides an additional specific and legitimate reason for rejecting [the physician's] opinion of [the claimant's] limitations."). Among other inconsistencies, Dr. Daniel's observations in his December 2009 assessment, including that Ryan-Werry's neuropathy "affects her physical mobility," and that she had "difficulty performing her day-to-day jobs," were at odds with an evaluation performed when Ryan-Werry visited the emergency room just two months prior, in which Ryan-Werry "reported no major physical problems," denied that she had "loss of strength or sensation" and had no "problems walking."

**b.** The ALJ also properly discredited Dr. Taylor's opinion because it was inconsistent with Ryan-Werry's own testimony. *See Morgan*, 169 F.3d at 602-03. Dr. Taylor opined that Ryan-Werry had "no useful ability" to, among other things, "maintain attention for two hour segment[s]"; that she was unable to "satisfactorily perform" a range of tasks, including "[r]emember[ing] work-like

3

procedures," "[m]ak[ing] simple work-related decisions," "[a]ccept[ing] instructions," and "[g]et[ting] along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes"; and that she was "seriously limited" in her ability to understand and carry out "very short and simple instructions." These conclusions were contradicted by Ryan-Werry's own statements that she could follow recipes and spoken instructions, gets along with authority figures "OK," and sends e-mails and sets up appointments on her computer.

Furthermore, the ALJ properly rejected Dr. Taylor's conclusions because his assessment was performed at a time when Ryan-Werry was not taking her medication. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Accordingly, an evaluation (like Dr. Taylor's) conducted at a time when Ryan-Werry was not completely on her medications undermines its reliability, and the ALJ did not err by discrediting Dr. Taylor's opinion for this reason.

    **c.** The ALJ also properly rejected Dr. McCollom's opinion because it contained several unexplained inconsistencies. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy between a

4

physician's notes and his opinions as to a claimant's capabilities was a specific and legitimate reason to reject the opinion).  Among other things, Dr. McCollom's observation that Ryan-Werry's cognitive and mental ability "to relate to others, including fellow workers and supervisors did not appear to be limited" was at odds with his recommendation that Ryan-Werry be restricted to jobs "in which she is limited in the amount of time she has to spend interacting with others."

       **d.**     Finally, the ALJ properly accorded Dr. Wingate's opinion "some weight."  Ryan-Werry argues that the ALJ erred by "failing to fully discuss and fully credit" Dr. Wingate's "clinical findings and opinion," and further erred by "failing to include in his residual functional capacity assessment all of the limitations Dr. Wingate described in her evaluation."  However, Ryan-Werry fails to identify which, if any, of Dr. Wingate's findings the ALJ failed to "fully credit."  By and large, the ALJ's residual functional capacity ("RFC")  assessment was consistent with Dr. Wingate's assessment.  Accordingly, the ALJ did not err in according Dr. Wingate's opinion "some weight."

       **2.**     Next, Ryan-Werry argues that the ALJ erred by failing to discuss several items of evidence in assessing Ryan-Werry's RFC.  In assessing the scope of a claimant's disability, an ALJ is not required to discuss *all* evidence presented to him; rather, he need only touch upon "significant probative evidence."  *Vincent*

5

*v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (citation and internal quotation marks omitted). Ryan-Werry has offered no argument as to why the items of evidence she identifies are "significantly probative" of her RFC. Accordingly, the ALJ did not err by failing to discuss these items of evidence.

**3.** Ryan-Werry further argues that the ALJ erred by failing to "properly evaluate" Ryan-Werry's testimony regarding her symptoms and limitations. Where, as here, a claimant "'produce[s] objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom," an ALJ may reject a claimant's testimony "'about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so,'" absent affirmative evidence of malingering. *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1281-84 (9th Cir. 1996)).

In this case, the ALJ offered specific, clear and convincing reasons for discrediting Ryan-Werry's testimony about the severity of her symptoms. First, the ALJ relied upon a series of inconsistencies between Ryan-Werry's medical records and her testimony. *See Morgan*, 169 F.3d at 599-600 (affirming an ALJ's rejection of a claimant's testimony regarding the severity of his symptoms based on "contradictions between [the claimant's] reports to" one physician "and his

6

reports to" another); *see also* SSR 96-7p, 61 Fed. Reg. 34483, 34486 (July 2, 1996) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). For example, in a "Disability Report" form submitted to the Social Security Administration ("SSA") in September of 2009, Ryan-Werry reported that she could not "walk very far without assistance," and had "chronic fatigue." However, during a visit to the emergency room just a month later, Ryan-Werry denied suffering from "shortness of breath, loss of strength or sensation," and further denied that she had "problems walking." Similarly, Ryan-Werry's statement in the September 2009 report to the SSA that her "neurological pain" prevented her from "walking very far and cause[d] severe pain," is contradicted by her statement to her physician during a November 19, 2009 doctor's visit that she was "not significantly tender or having symptoms in the feet."

The ALJ also found Ryan-Werry's testimony not credible because she gave "inconsistent statements about her ending work in 2003." In her September 2009 report to the SSA, Ryan-Werry reported that she stopped working in 2003 for several reasons, including "[b]ecause of [her] condition." The ALJ found this statement to be at odds with Ryan-Werry's statements during the May 19, 2011 hearing, in which Ryan-Werry testified that she "got sick in 2006," and that she

7

was able to "walk 3 miles with no problem" before 2006. These inconsistencies furnished yet another "clear and convincing" reason to discount Ryan-Werry's testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming an ALJ's rejection of a claimant's testimony because the claimant stated that he "left his job because he was laid off, rather than because he was injured").

4.      Next, Ryan-Werry argues that the ALJ failed to "properly evaluate lay witness evidence"–specifically, the testimony of Ryan-Werry's husband, David Werry. The ALJ discounted Werry's testimony because 1) he was married to Ryan-Werry; 2) "he presumably lives in the same household with her;" and, 3) because Werry "has a financial interest in [Ryan-Werry] obtaining benefits."

The ALJ erred in rejecting Werry's testimony for these reasons. We have repeatedly warned against discounting a lay witness' testimony simply because the witness is a claimant's spouse, and is therefore an "interested party." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir 2009). "Such a broad rationale for rejection contradicts [this Court's] insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 2009)) (brackets omitted). By rejecting Werry's testimony because he shared

8

a household with Ryan-Werry, and had a financial stake in her award of benefits, the ALJ ran afoul of our requirement.

Nonetheless, we conclude that, in this case, the error was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context."). Ryan-Werry fails to identify how or why Werry's observations would alter the ALJ's RFC determination. Moreover, Werry's statements about his wife's functional abilities largely mirror Ryan-Werry's own assessment. Discrediting cumulative evidence is not harmful error. *See Molina v. Astrue*, 674 F.3d 1104, 1119 & n.10 (9th Cir. 2012) (noting that, in social security cases, we "apply the same kind of 'harmless-error' rule that courts apply in civil cases" (quoting *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009)) (internal quotation marks omitted); *see also Bank of the W. v. Commercial Credit Fin. Servs., Inc.*, 852 F.2d 1162, 1165 n.2 (9th Cir. 1988) (holding that a district court's erroneous exclusion of a witness' declaration was harmless because the declaration was "cumulative of other evidence").

**5.**     Ryan-Werry further argues that the ALJ's assessment of her RFC was erroneous because the ALJ misstated the testimony of a vocational expert ("VE"). In his decision, the ALJ stated that the VE had testified that "a person with [Ryan-

Werry's RFC] and background would be able to perform" certain jobs, including jobs as an "order clerk and a skill training program coordinator."

Ryan-Werry is correct that the VE never gave such testimony; however, the error was harmless. Once again, Ryan-Werry has failed to offer anything more than a conclusory argument as to why this misstatement of the VE's testimony was harmful error. The ALJ did not rely on any portion of the VE's testimony in making his decision as to Ryan-Werry's RFC. Accordingly, the ALJ's error was not harmful. *See Stout*, 454 F.3d at 1055 ("We have also affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

**6.** Finally, Ryan-Werry offers a conclusory argument that the ALJ erred by "improperly determin[ing] Ryan-Werry's RFC." This argument is little more than a summation of all the errors previously discussed (and rejected). For the reasons set forth above, the errors identified by Ryan-Werry are either meritless or harmless.

**AFFIRMED.**